COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1734**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV83**

IN COURT OF APPEALS
DISTRICT II

CHRIS J. KOEHLER,

PLAINTIFF-APPELLANT,

V.

ADAM P. GOODMAN AND AMANDA OTTO,

DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Washington County: JAMES K. MUEHLBAUER, Judge. *Affirmed*.

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Chris J. Koehler, a pro se litigant, appeals from a final judgment against him of $19,445 in compensatory damages, double

compensatory damages per WIS. ADMIN. CODE § ATCP 110.05(2)(d) (through May 2026)[1] and WIS. STAT. § 100.20(5) (2023-24),[2] and $12,273.50 in attorney fees and costs. For the following reasons, we affirm.

## BACKGROUND

¶2 Chris J. Koehler and Adam P. Goodman signed two home improvement contracts in 2022, one in July and the other in August. The July contract provided that Koehler was to replace the siding and gutters on Goodman and Amanda Otto's house (hereinafter referred to collectively as "Goodman") and perform a number of other tasks, including a final walkthrough with the owners, in exchange for a $16,445 down payment from Goodman and an additional $16,445 upon completion. Goodman alleged he also paid Koehler for some materials for that work. The August contract stated Koehler was to replace the deck at Goodman's house in exchange for a $3,000 down payment and an additional $6,000 upon completion. Neither contract specified a date of completion, nor did either require additional payments while work was in progress.

¶3 Koehler averred that he purchased and installed 3,500 square feet of siding for the July contract, but left an additional 300 square feet of siding on Goodman's property which he did not install.[3] He explained that he did not have the money to complete the siding for the July contract. He tried to use another

---

[1] All references to WIS. ADMIN. CODE § ATCP 110.05 are to the May 2026 register.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

[3] Koehler's affidavit references "35 sq." and "3 sq." In the construction and roofing trades, a "square" is the standard industry shorthand for an area of 100 square feet. Therefore, "35 sq." equates to 3,500 square feet, and "3 sq." equates to 300 square feet.

customer's down payment to fund materials for Goodman's siding. Goodman alleged that Koehler abruptly left the work site without notice and did not return for months. Koehler testified that he "got sick" and "couldn't go to work." As for the August contract, Koehler acknowledged he never began work on Goodman's deck.

¶4 In January 2023, Goodman's attorney sent an email instructing Koehler to no longer directly contact Goodman or Otto. He stated his clients demanded that Koehler provide a written lien waiver for all work, labor, and materials provided; return all payments already made to him; return all materials paid for by Goodman; and provide a written account of how all payments were used. The email indicated that counsel would recommend litigation if Koehler failed to provide what Goodman demanded. Goodman alleged that Koehler never paid back the down payment or paid for the materials Goodman purchased. Goodman hired another contractor to complete the unfinished work from both contracts with Koehler. Nevertheless, Koehler sent Goodman an invoice in June 2023 for his services and the materials related to the July contract.

¶5 In January 2024, Koehler filed a lawsuit against Goodman in small claims court, seeking $9,654 in alleged labor and material costs accrued prior to cancellation of the contract, together with court costs. This sum included a fee for the removal of the existing siding, which had been labeled "no charge" on Koehler's 2023 invoice, but which Koehler alleged Goodman owed because the contract was later canceled. Goodman counterclaimed for breach of the July contract and unjust enrichment from the down payments and materials payments Goodman had made to Koehler. Goodman further alleged six violations of WIS. ADMIN. CODE § ATCP 110, for which he sought double damages together with costs and reasonable attorney fees under WIS. STAT. § 100.20(5). Goodman also

alleged affirmative defenses, including that Koehler failed to mitigate his damages, and that his damages, "if any, were suffered as a proximate result of his own carelessness[.]" Goodman's counterclaims exceeded $10,000, so the case was moved to large claims court.

¶6 Koehler moved for summary judgment on his claims, arguing for the first time for punitive damages against Goodman, which were double the amount Koehler had claimed in compensatory damages. He admitted he "breached the contracts by failing to complete the work in a timely manner." However, he claimed Goodman refused to pay him "out of spite[,]" that Goodman's countersuit was frivolous, that Goodman "unjustly [pushed Koehler's] small claims lawsuit into civil court[,]" that continued litigation was frivolous, and that Goodman "display[ed] vindictiveness" toward him. Under deposition, Koehler said he sought punitive damages because "[Goodman] wrecked [his] business by not paying [him], kicking [him] off the job." He also stipulated that his failure to put a date of completion on either contract violated the administrative code. *See* WIS. ADMIN. CODE § ATCP 110.05(2)(d).

¶7 The circuit court denied Koehler's motion for summary judgment. However, Goodman filed a cross-motion for summary judgment solely on liability for violation of WIS. ADMIN. CODE § ATCP 110, which the court granted, but ordered those damages would be decided at a later trial.

¶8     The circuit court issued a Notice of Hearing[4] for a mandatory scheduling conference.  *See* WIS. STAT. § 802.10(3).  The Notice of Hearing stated, "[f]ailure to appear or call timely will result in dismissal of the case or judgment being entered."  Koehler did not appear at the conference, nor did he inform the court of the reasons for his nonappearance.  Accordingly, the court found Koehler in default, dismissed all of his claims, and declared that all of his defenses to damages and liability were waived.  The court further ordered that as to the damages from violation of WIS. ADMIN. CODE § ATCP 110, Koehler would be held liable "in an amount to be determined by the submission of affidavits from one or more of the Defendants and defense counsel."  Koehler appeals.

## DISCUSSION

¶9     "The grant or denial of a motion for summary judgment is a matter of law that this court reviews de novo."  *Summers v. Touchpoint Health Plan, Inc.*, 2006 WI App 217, ¶7, 296 Wis. 2d 566, 723 N.W.2d 784.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  WIS. STAT. § 802.08(2).  "[A]n adverse

---

[4] The actual Notice of Hearing, identified as "Court Docket No. 72" in the circuit court's Order from Scheduling Conference signed on June 6, 2025, is not in the Record sent to this court. The Order, however, fully details the contents of that Notice for purposes of this appeal.  The parties, however, are encouraged to make certain that the Record is complete. *Mercury Recs. Prods., Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 506, 283 N.W.2d 613 (Ct. App. 1979) ("The responsibility for the composition of the appellate record lies with both appellant and respondent.").  *See* WIS. STAT. § 809.15(1)(a).  "[W]hen an appellate record is incomplete in connection with an issue raised by the appellant, [the court of appeals] must assume that the missing material supports the [circuit] court's ruling." *Jensen v. McPherson*, 2004 WI App 145, ¶6 n.4, 275 Wis. 2d 604, 685 N.W.2d 603 (quoting *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993)).

party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial." Sec. 802.08(3).

¶10    However, "[t]he determination of whether to vacate a default judgment is within the sound discretion of the [circuit] court.  On appeal, the [circuit] court's decision will not be disturbed unless there has been a clear [erroneous exercise of discretion]." *Gaertner v. 880 Corp.*, 131 Wis. 2d 492, 500, 389 N.W.2d 59 (Ct. App. 1986) (citation omitted).  "Even if the evidence favoring a default judgment is slight, we will affirm unless it was impossible for the [circuit] court to grant the judgment in the exercise of its discretion." *Id.* at 498.

¶11    On appeal, Koehler raises three arguments: (1) that he was entitled to summary judgment; (2) that Goodman was not entitled to partial summary judgment; and (3) that Goodman did not submit adequate support for his damages. We are not persuaded on any argument.

¶12    Koehler advances two arguments that the circuit court erred in denying his motion for summary judgment, contending that the scheduling conference would never have occurred without that alleged error.  The first is that the court should have granted his motion for summary judgment on the basis that he was entitled to recover the "undisputably owed" balance of $4,627.  He explains that his damage "methodology was based on the home improvement benefits Goodman received from Koehler[.]"  Further, he argues that this figure does not account for quantum meruit damages, which "are measured by the reasonable value of the plaintiff's services." *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992).  "While recovery for unjust enrichment is based

upon the inequity of allowing the defendant to retain a benefit without paying for it, recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered." ***Id.***

¶13　Koehler fails to persuade us that the denial of his summary judgment motion was error. To begin, Koehler is not entitled to damages, because "a party who violates an agreement should not be permitted to recover under the contract." ***McBride v. Wausau Ins. Cos.***, 176 Wis. 2d 382, 388, 500 N.W.2d 387 (Ct. App. 1993) (citing ***Hartford Elevator, Inc. v. Lauer***, 94 Wis. 2d 571, 580-81, 289 N.W.2d 280 (1980)). He admits that he did not complete either contract. Moreover, because both contracts were explicit rather than implied, and it is undisputed that Goodman paid the down payments and that Koehler never completed either contract, Koehler's argument for quantum meruit recovery fails as a matter of law.

¶14　Koehler further argues that "[t]he [circuit] court relied on meritless allegations made by Goodman by which to deny summary judgment." Specifically, Koehler contends that Goodman's statement that "Koehler did not have that amount of work completed before walking off the job" was meritless because it contained no facts or evidence as to the amount of work Koehler did or did not complete. However, determinations of reliability and credibility are trial issues not to be decided at summary judgment. ***Pum v. Wisconsin Physicians Serv. Ins. Corp.***, 2007 WI App 10, ¶16, 298 Wis. 2d 497, 727 N.W.2d 346. Those allegations were contained in Goodman's responses to Koehler's interrogatories, so the court did not merely rely on the pleadings. As the court stated, Goodman "dispute[d] Koehler's summary judgment claim to have completed enough work to be entitled to the amounts Koehler was paid and the further amounts he is claiming." We agree with the circuit court that Goodman's response created a

7

genuine dispute of material fact as to the value of the work Koehler had actually performed.

¶15     Koehler next contends that the circuit court erred by granting Goodman's cross-motion for summary judgment on the issue of liability for violation of WIS. ADMIN. CODE § ATCP 110 in spite of the fact that Goodman did not prove damages.  However, the law explicitly allows this type of summary judgment: "[a] summary judgment … may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."  WIS. STAT. § 802.08(2).  Koehler admits that he violated § ATCP 110, but argues Goodman did not advance enough evidence to establish a genuine dispute on the issue of damages.  Koehler cites no authority for his proposition that such evidence of damages is required prior to trial.  Accordingly, we decline to overturn the circuit court's decision on that basis.

¶16     Finally, while Koehler concedes that the circuit court properly entered default judgment for his failure to appear at the scheduling conference, he contends Goodman did not submit adequate evidence in his affidavit for the court to award damages.  Specifically, Koehler contends that the court erroneously exercised its discretion by "rendering final money judgment against Koehler based on Goodman's frivolous and unlawful affidavit and the inappropriate rules and laws which [he] relied on."  We disagree.  Koehler does not dispute that he had notice of the scheduling conference; he admits in his brief that he "felt defeated and did not desire to pursue further proceedings, therefore, chose not to attend the hearing and to forfeit his claim."  It is also undisputed that the wording of the notice was clear as to the consequences of failing to appear: "[f]ailure to appear or call timely will result in dismissal of the case or judgment being entered."  Koehler does not appeal the entry of the default judgment, which both dismissed

all of his claims and declared that all of his defenses to damages and liability were waived. Koehler cannot now simply reassert those defenses. He is, actually, asking this court to reverse the default judgment (or render it ineffective) without properly appealing. Accordingly, we will not address Koehler's legal argument on this point.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.